

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

FILED

NOV 21 2001

CLERK, U.S. DISTRICT COURT

By _____
Deputy

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| HOST COMMUNICATIONS, INC. | § | |
| | § | |
| Plaintiff, | § | **3 0 1 - C V 2 4 2 3 - X** |
| | § | |
| v. | § | CIVIL ACTION NO. _____ |
| | § | |
| GLOBAL SPORTS, INC. and | § | Demand for Jury Trial |
| FOGDOG, INC., | § | |
| | § | |
| Defendants. | § | |

## COMPLAINT

The Plaintiff, Host Communications, Inc. ("HCI"), by counsel, states as follows for its Complaint against Defendant, Global Sports, Inc. and Defendant Fogdog, Inc. (collectively referred to herein as "Defendants"):

### PARTIES, JURISDICTION AND VENUE

1.     The Plaintiff HCI is a corporation organized and existing under the laws of the Commonwealth of Kentucky with its principal place of business at 546 East Main Street, Lexington, Kentucky 40507. HCI is the successor-in-interest of AIO Venture, L.P., a Texas limited partnership ("AIO").

2.     The Defendant, Global Sports, Inc. ("Global Sports') is a corporation organized and existing under the laws of State of Delaware with its principal place of business at 1075 First Avenue, King of Prussia, Pennsylvania. Global Sports' registered agent in Delaware is Prentice-Hall Corporate Systems, Inc., 2711 Centerville Road, Suite 400, Wilmington, Delaware 19808.

3.     The Defendant, Fogdog, Inc. ("Fogdog") is a wholly owed subsidiary of Global Sports and is a corporation organized and existing under the laws of Delaware with its principal place of

– 1 –

business at 500 Broadway, Redwood City, California. Fogdog's registered agent in Delaware is Corporation Service Company, 2711 Centerville Road, Suite 400, Wilmington, Delaware 19808.

4.     This Court has jurisdiction over this controversy pursuant to 28 U.S.C. § 1332 and the amount in controversy exceeds $75,000.00 exclusive of interests and costs.

5.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

### FACTUAL BACKGROUND

6.     HCI is a national sports marketing company and is the developer, owner and promoter of a national four-on-four flag football tour known as the "Let-It-Fly® United States Flag Football Tour" (the "Tour") which is held in markets throughout the United States. The Tour was formerly owned and operated by HCI's predecessor-in-interest, AIO, and was called "Draw Play®." HCI licenses the Let-It-Fly® name and registered marks (the "Marks") for promotional use to various corporate sponsors for a fee which allows corporate sponsors to become associated with the Let-It-Fly® events in each market of the Tour.

7.     Upon information and belief, Fogdog is an internet-based company that sells retail sporting goods.

8.     On or about July 1, 1999, HCI's predecessor-in-interest, AIO (hereinafter, AIO and HCI shall be referred to collectively as "HCI"), entered into a "Sponsorship Agreement" with Fogdog (the "Agreement," attached hereto as Exhibit 1). The Agreement designated Fogdog as the "Official Sporting Goods Retailer of the Draw Play Tour®" in each of 14 various markets. The term of the Agreement was for a period covering two (2) Tours, commencing July 1, 1999 and terminating upon completion of the 2000-01 Tour in February of 2001. The Draw Play Tour® was re-named "Let-It-Fly" for the 2000-2001 Tour (hereinafter "Draw Play® and Let-It-Fly® shall be referred to collectively as "Let-It-Fly®").

9.    Pursuant to Paragraph 1 of the Agreement, HCI agreed to sell to Fogdog the right to use the Let-It-Fly® name and Marks in its advertising and promotional activities and materials and granted Fogdog exclusive marketing, sales and promotional rights in the Retail Sporting Goods Category. In paragraphs 2 and 3 of the Agreement HCI agreed to provide Fogdog with certain Tour benefits which consisted of various marketing exposure, signage, media exposure, promotional rights, title sponsorship rights, public address recognition in each Tour market, hospitality rights and the right to distribute products, coupons and premium items to Tour participants.

10.    In return, Fogdog agreed to pay HCI a sponsor fee in the amount of $50,000, cash for the 1999-2000 Tour. In addition, Fogdog agreed to provide HCI with $150,000 worth of Fogdog products for the 1999-2000 Tour. Fogdog also agreed to create a system whereby Tour participants could register for the Tour events on Fogdog's website. Fogdog collected entry fees from these registrants, on behalf of HCI, and remitted these amounts to HCI. All consideration owed by Fogdog for the 1999-2000 Tour, including the entry fees collected, was paid in a timely manner.

11.    With respect to the 2000-01 Tour, Fogdog agreed to pay HCI a sponsor fee of $175,000 and to provide HCI with $75,000 worth of Fogdog products for the Tour. One-half of the sponsor fee was due on or before August 1, 2000 and the remainder was due on or before March 30, 2001.

12.    Fogdog paid the first installment of the sponsor fee owed for the 2000-2001 Tour but failed to pay the portion of the sponsor fee owed on March 30, 2001 ($87,500.00), despite the fact that HCI has fully performed all of its obligations with respect to the Agreement.

13.    Moreover, Fogdog has failed to remit to HCI the entry fees it collected for the 2000-2001 Tour in the amount of $74,230.00.

14.    On or about December 20, 2000, HCI received notice that Fogdog had entered into an agreement to merge with a wholly-owned subsidiary of Global Sports. Copy of Notice attached hereto as <u>Exhibit 2</u>. The Notice states that Global Sports "intends to continue the Agreement as the new owner of Fogdog (including those situations in which Global Sports' acquisition of Fogdog constitutes an assignment of the Agreement under law or under the terms of the Agreement, itself)."

15.    On July 26, 2001, HCI sent the Defendants a letter demanding full payment for the amounts owed by Fogdog pursuant to the Agreement. Copy attached hereto as <u>Exhibit 3</u>.

16.    On October 15, 2001, the undersigned sent the Defendants another letter demanding full payment. Copy attached hereto as <u>Exhibit 4</u>.

17.    To date, Defendants have failed to respond to either of the demand letters and have failed to remit the required payments under the Agreement.

## COUNT I – BREACH OF CONTRACT

18.    Paragraphs 1 through 17 are incorporated by reference as if set out in full herein.

19.    In consideration of being granted certain rights by HCI as a Tour sponsor, Defendants are, jointly and severally, obligated to pay HCI $161,930 in fees and entry fees collected by Fogdog on behalf of HCI.

20.    Defendants have materially breached their contractual obligations under the Agreement by failing to pay or provide HCI the consideration owed to date. Defendants have also materially breached their agreement to collect and remit entry fees received on behalf of HCI from Defendants' website.

21.    By virtue of Defendants' breach, HCI is entitled to recover compensatory, consequential and incidental damages in an amount exceeding the jurisdictional limits of this Court.

## COUNT II – CONVERSION

22.    Paragraphs 1 through 21 are incorporated by reference as if set out in full herein.

23.    Defendants collected, on behalf of HCI, certain entry fees for the 2000-2001 Tour. Demand has been made upon Defendants to return and remit these entry fees; however, Defendants have failed to do so.

24.    Defendants have converted the entry fees belonging to HCI and have exercised unauthorized and wrongful dominion and control over these entry fees to the exclusion of HCI's rights.

25.    By virtue of Defendants' conversion, HCI is entitled to recover damages in an amount exceeding the jurisdictional limits of this Court.

## COUNT III – CONSTRUCTIVE TRUST

26.    Paragraphs 1 through 25 are incorporated by reference as if set out in full herein.

27.    Defendants hold HCI's 2000-2001 tour entry fees and have a duty to convey these fees to HCI, otherwise they would be unjustly enriched if they are permitted to retain these fees.

28.    HCI seeks to impose a constructive trust on the fees currently held by Defendants in that a constructive trust is needed to adequately compensate HCI and prevent the unjust enrichment of the Defendants.

## COUNT IV – INJUNCTIVE RELIEF

29.    Paragraphs 1 through 28 are incorporated by reference as if set out in full herein.

30.    Defendants' refusal to pay HCI the consideration owed under the Agreement entitles HCI to a preliminary injunction preventing Defendants from using the Marks in any manner, from continuing to market itself as an official sponsor of Let-It-Fly®, and from affiliating itself with the Tour during the pendency of this action. HCI is also entitled to a permanent injunction preventing Fogdog from using the Marks in any manner, from using any of the advertising and promotional

benefits afforded to it by HCI pursuant to the Agreement, from identifying itself as an official sponsor of the Tour and from continuing to affiliate itself with the Tour.

## COUNT V – ATTORNEYS' FEES

31.    Paragraphs 1 through 30 are incorporated by reference as if set out in full herein.

32.    As a result of Defendants' breach of the Agreement and other conduct described herein, and pursuant to Chapter 38 of the Texas Civil Practice and Remedies Code and the Agreement, HCI is hereby entitled to an award of all of its attorneys' incurred in connection with the prosecution of this action.

## COUNT VI – JURY DEMAND

33.    Plaintiff hereby respectfully requests a jury trial in this matter.

WHEREFORE, HCI respectfully prays for the following relief:

A.    An award of compensatory, consequential and incidental damages against the Defendants as a result of Defendants' breach of the Agreement and conversion;

B.    An imposition of a constructive trust on all of the proceeds currently being held by Defendants which belong to HCI;

C.    An injunction preventing Defendants from hereafter: (i) using the Marks in any manner; (ii) indicating any affiliation with the Marks or the Tour; and (iii) using any of the benefits previously provided to it as a Tour sponsor;

D.    Its costs and expenses herein expended, including all reasonable attorney's fees and any and all prejudgment and post-judgment interest as permitted by law;

E.    A trial by jury; and

F.    Any and all other relief to which HCI may appear entitled.

Respectfully submitted,

**DAVID, GOODMAN & MADOLE,**
A Professional Corporation

By:_____
    Mark A. Goodman
    State Bar No. 08156920
    Daniel J. Madden
    State Bar No. 24002513
Two Lincoln Centre
5420 LBJ Freeway, Suite 1200
Dallas, Texas  75240
972/991-0889
972/404-0516 Telecopier

ATTORNEYS FOR PLAINTIFF
HOST COMMUNICATIONS, INC.

**OF COUNSEL:**

Barbara B. Edelman
Eric S. Horstmeyer
DINSMORE & SHOHL LLP
Lexington Financial Center, Suite 2020
250 W. Main Street
Lexington, Kentucky  40507
859/425-1000
859/425-1099 – Fax

ATTORNEYS FOR PLAINTIFF
HOST COMMUNICATIONS, INC.

106510 1